**UPPER LAKES SHIPPING, LTD.,**
**Plaintiff,**

v.

**INTERNATIONAL LONGSHOREMEN'S**
**ASSOCIATION et al., Defendants.**

United States District Court
S. D. New York.

June 27, 1968.

McGovern, Vincent & Connelly, New Rochelle, N. Y., for Upper Lakes Shipping, Ltd.

Schulman, Abarbanel & Kroner, New York City, for Seafarers' International Union of North America.

McMahon & Crotty, Buffalo, N. Y., for ILA–Great Lakes Dist.

## MEMORANDUM

BONSAL, District Judge.

Defendant Seafarers' International Union of North America (SIUNA) moves to amend its answer to include a counterclaim which is identical to its cross-libel dismissed by this Court on December 23, 1965 (December Memorandum). Defendant International Longshoremen's Association—Great Lakes District (ILA) joins with SIUNA to request that its counterclaim be reinstated as well.

SIUNA urges that its proposed counterclaim (the counterclaim) be allowed because the merger of the Civil and Admiralty Rules of Procedure, effective July 1, 1966, was designed to do away with the distinctions between admiralty and civil proceedings. SIUNA contends that the counterclaim is compulsory or is in the nature of a set-off so that independent diversity jurisdiction need not be satisfied, or alternatively, that diversity of citizenship exists among the parties.

Plaintiff Upper Lakes Shipping, Ltd. (Upper Lakes) opposes the motion to amend and contends that the counterclaim is not compulsory because it does not arise out of the same transaction as the complaint; that the counterclaim is not a set-off; and that there is no diversity of citizenship among the parties.

■ With the merger of the Civil and Admiralty Rules, effective July 1, 1966, Rule 13, F.R.Civ.P., governing counterclaims became applicable to admiralty proceedings (see Colby, Admiralty Unification, 54 Geo.L.J. 1268, 1271–72 (1966)) in "all proceedings in actions brought thereafter and also in all further proceedings in actions then pending, *except to the extent that in the opinion of the court * * * application in a particular action then pending would not be feasible or would work injustice, in which event the former procedure applies*," Order, 383 U.S. at 1031, Para. 2 (February 28, 1966). (Italics the Court's.)

Upper Lakes claims that SIUNA and other unions tortiously interfered with the plaintiff's shipping operations after Upper Lakes terminated its bargaining agreement with SIU-Canada, an affiliate union of SIUNA, and entered into a collective bargaining agreement with the Canadian Maritime Union (CMU). The tortious acts which SIUNA is alleged to have committed include setting up of picket lines around Upper Lakes' vessels; inducing employees of Upper Lakes' American customers to refuse to perform services for their own employers; threatening Upper Lakes' customers with work stoppages; committing acts of violence against Upper Lakes' ships, shore facilities, and employees; and circulating malicious and false statements against Upper Lakes with its customers and suppliers to induce them to discontinue business with Upper Lakes.

SIUNA's counterclaim alleges unfair labor practices committed by Upper Lakes in Canada and interference with the rights of a Canadian union and other unions, in that Upper Lakes and others engaged in a conspiracy to weaken and destroy SIUNA by taking actions designed to weaken and destroy affiliate unions of SIUNA, and locked out members of affiliate unions and replaced them with members of another union, thus depriving SIUNA of revenues from union dues. SIUNA contends that the acts alleged in the counterclaim provoked the acts alleged in Upper Lakes' complaint.

■ In essence, the counterclaim arises out of a controversy over the labor union policies of Upper Lakes, a Canadian employer. As this Court stated in its Memorandum to Counsel in September 1965 (September Memorandum) and reaffirmed in its December Memorandum, Upper Lakes does not have a claim under the LMRA, Benz v. Compania Naviera Hidalgo, S.A., 353 U.S. 138, 77 S.Ct. 699, 1 L.Ed.2d 709 (1957), and neither does SIUNA. While Upper Lakes was not precluded from a suit for maritime tort (September Memorandum at page 5), SIUNA did not establish either that its cross-libel stated a maritime claim or that its claim in the cross-libel arose out of the same transaction as the claim of Upper Lakes. (December Memorandum at page 6). In its September Memorandum, the Court stated that it

"has no jurisdiction * * * over a labor dispute between Upper Lakes and two Canadian unions, SIU-Canada and CMU. If it is the position of the respondents [SIUNA and ILA] that the alleged maritime torts * * * were caused by unfair labor practices committed by Upper Lakes in Canada * * * their grievance must be taken before a court having jurisdiction of a civil action between the parties and competent to adjudicate the applicable Canadian law. * * * [The matters raised in the cross-libel] would seem to be matters to be appropriately determined by a Canadian court under Canadian law.

" * * * The acts alleged in the cross-libel were different in time, place and purpose from the acts alleged in the libel." (September Memorandum at page 6.)

In the Court's December Memorandum, the Court dismissed the cross-libel for the reasons stated in the September Memorandum.

■ The Court is of the opinion that under the merger of the Civil and Admiralty Rules, whether or not the

counterclaim is compulsory or in the nature of a set-off the counterclaim should not be allowed at this time. The proposed counterclaim comes almost three years after the Court's first Memorandum on the subject, two and one-half years after the Memorandum dismissing the cross-libel, and two years after the merger of the Civil and Admiralty Rules. To allow the counterclaim at this time is not feasible and would work an injustice.

SIUNA's motion to amend its answer to include the proposed counterclaim identical to the cross-libel and ILA's request that its counterclaim be reinstated, are denied.

It is so ordered.